**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Richmond Division**

| | | |
|---|---|---|
| In re: | ) | |
| | ) | Chapter 7 |
| STEPHEN S. MEREDITH, CPA, P.C., | ) | Case No. 03-37256 |
| | ) | |
| Debtor. | ) | Adv. Proc. No. 05-03050 |
| | ) | |
| ROY M. TERRY JR., Trustee for the | ) | |
| Bankruptcy Estate of Stephen S. Meredith, | ) | |
| CPA, P.C. | ) | |
| | ) | |
| Appellant, | ) | |
| | ) | |
| v. | ) | Civil Case No. 3:06CV848-HEH |
| | ) | |
| DARLENE S. MEREDITH, | ) | |
| MEREDITH FINANCIAL GROUP, INC. and | ) | |
| STEVEN S. MEREDITH, CPA, PLLC, | ) | |
| | ) | |
| Appellees. | ) | |
| | ) | |

**MEMORANDUM OPINION**
**(Affirming Order of the Bankruptcy Court)**

This matter is before the Court on appeal of a November 22, 2006 Order of the United States Bankruptcy Court for the Eastern District of Virginia ("Bankruptcy Court") denying recovery of an avoidable transfer under 11 U.S.C. § 550 to Roy M. Terry, Jr., the Trustee for the bankruptcy estate of Stephen S. Meredith, CPA, P.C. ("the Trustee"). Both parties have filed memoranda of law in support of their respective positions. The Court will dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the Court, and argument would not aid the decisional process. Based on an extensive review of the record in this case and for the reasons set forth below, the Court will affirm the Order of the

Bankruptcy Court.

## I. Background

### A. Procedural History

An involuntary Chapter 7 bankruptcy proceeding was filed against debtor Stephen S. Meredith, CPA, P.C. ("the Debtor") on July 25, 2003. The bankruptcy proceeding arose out of a $250,000 judgment debt entered against the Debtor and Stephen S. Meredith ("Mr. Meredith") individually on December 18, 2002. In response to the judgment against him, Mr. Meredith transferred his accounting practice to Meredith Financial Group ("MFG") on December 31, 2002. Mr. Meredith's wife Darlene Meredith ("Ms. Meredith") was named president and sole shareholder of MFG. Ms. Meredith initiated divorce proceedings against Mr. Meredith in July 2003, at which point Mr. Meredith formed Stephen S. Meredith, CPA, PLLC ("the PLLC") in an effort to continue his accounting business despite the involuntary bankruptcy. The Bankruptcy Court entered a default judgment against the PLLC on September 9, 2005; it is not a party to the instant case.

This appeal arises out of an adversary proceeding initiated by the Trustee of the bankruptcy estate against MFG, the PLLC, and Ms. Meredith. The Trustee sought, among other things, the piercing of MFG's corporate veil in order to hold Ms. Meredith personally liable for the debts of the Debtor on the theory that MFG is the alter ego of the Debtor, or, in the alternative, a finding that MFG and the PLLC were corporate successors to the Debtor. The Trustee also sought the avoidance of the allegedly fraudulent transfer of the Debtor's accounting practice to MFG and Ms. Meredith under 11 U.S.C. § 548, and its return to the estate, as provided by §§ 549 and 550 of the Bankruptcy Code. The Bankruptcy Court found in favor of the Trustee, holding that MFG was the corporate successor to the Debtor, and additionally that it was

an alter ego of the Debtor. The Bankruptcy Court also determined that the transfer of the accounting practice to MFG was made with fraudulent intent and therefore was avoidable. However, as to the ultimate issue—whether the Trustee could recover anything from Ms. Meredith—the Bankruptcy Court held that MFG's corporate veil could not be pierced so as to expose Ms. Meredith to personal liability for the corporation's debts. The Bankruptcy Court concluded that she had not received a "quantifiable benefit" from the fraudulent transfer. The Trustee's prayer for restitution to the estate from Ms. Meredith in the amount of $138,752.99, representing the revenue of the accounting practice for the year in which the fraudulent transfer occurred, was accordingly denied. The Bankruptcy Court, however, did permit recovery of the salary Ms. Meredith received as president of MFG.

### B. Bankruptcy Court Decision

The Bankruptcy Court's decision primarily rested on Section 550 of the Internal Revenue Code ("Section 550"), which provides that a trustee may recover fraudulently transferred property from the transferee for the benefit of the estate. 11 U.S.C. § 550. The Bankruptcy Court relied on the analysis of Section 550 in *Baldi v. Lynch (In re McCook Metals)*, 319 B.R. 570 (Bankr. N.D. Ill. 2005), which set forth a three-part test for determining whether an individual was a "person for whose benefit such transfer was made" under 11 U.S.C. § 550. *McCook*, 319 B.R. at 390. First, the benefit must have been actually received by the beneficiary. *Id.* Second, the benefit must be quantifiable. *Id.* Third, the benefit must have been accessible to the beneficiary. *Id.* Under this reasoning, a transferee as defined in Section 550(a) is only liable to the estate to the extent that they actually acquired benefits.

The Bankruptcy Court initially relied on Ms. Meredith's W-2 forms in a memorandum opinion issued September 29, 2006. Her W-2 for 2003 reflected earned income of $43,000 from

MFG, and the Bankruptcy Court thus found that Ms. Meredith had received a quantifiable benefit recoverable under Section 550.

Thereafter, Ms. Meredith filed a motion to reconsider, in which she denied receiving a benefit from the transfer of the accounting practice to MFG. The Bankruptcy Court granted the motion to reconsider. Ms. Meredith subsequently explained that she and Mr. Meredith used MFG as a "clearinghouse" for multiple other enterprises. According to Ms. Meredith, the income on which she had paid taxes was in fact compensation for work performed for another corporate entity owned by the Merediths, Mortgage Resource Group. Noting that deposits made from Mortgage Resource Group to MFG corresponded to after-tax disbursements from MFG to Ms. Meredith, the Bankruptcy Court filed an Amended Opinion finding as a matter of fact that Ms. Meredith had received no quantifiable benefit from the debtor's fraudulent transfer, and held that the Trustee could not recover the value of the avoidable transfer.  The Trustee appeals.

### III. Standard of Review

On appeal, this Court "may affirm, modify, or reverse a bankruptcy judge's judgment, order, or decree or remand with instructions for further proceedings." Fed. R. Bankr. P. 8013. This Court "review[s] the bankruptcy court's legal conclusions *de novo* and its factual findings for clear error." *In re Hartford Sands Inc.*, 372 F.3d 637, 639 (4th Cir. 2004).  In cases where the issues present mixed questions of law and fact, the court will apply the clearly erroneous standard to the factual portion of the inquiry and *de novo* review to the legal conclusions derived from those facts. *Gilbane Bldg. Co. v. Fed. Reserve Bank*, 80 F.3d 895, 905 (4th Cir.1996).

### IV. Analysis

Section 550 provides that when a debtor makes an avoidable transfer of property under sections 548 and 549 of the Bankruptcy Code, a trustee "may recover, for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property," from either

the initial transferee of the property, or "the entity for whose benefit such transfer was made." 11 U.S.C. § 550(a). The Trustee seeks to recover from Ms. Meredith the value of the accounting practice at the time it was fraudulently transferred, which the Bankruptcy Court determined to be $138, 752.99, "[i]n the absence of other evidence."[1]

Mr. Meredith initially transferred his accounting practice to MFG, and seven months later transferred it to the PLLC. Ms. Meredith is not an "initial transferee" under Section 550, though she could potentially be liable under a veil-piercing theory since she was the sole shareholder and president of the transferee corporation, MFG. However, that would be inappropriate in this case because the Bankruptcy Court found no evidence of fraud on her part that would warrant disregarding MFG's corporate identity. For the Trustee to recover from her she must be a party "for whose benefit [the] transfer was made." 11 U.S.C. § 550(a). The Trustee argues that the transfer was made for the benefit of Ms. Meredith, specifically to provide support for her. Defendants counter that Mr. Meredith retained total control over the accounting practice, and that the motivation for the transfer was to permit Mr. Meredith to continue his employment as a Certified Public Accountant and preserve the income stream from his practice.

Section 550 is subject to two differing interpretations regarding who is a party "for whose benefit [the] transfer was made." The first reads the statute facially and turns solely on the intent of the debtor. Under this construction, as long as the debtor intended to benefit a third party, it does not matter if the party actually benefitted or even was harmed. The competing interpretation is that the party must receive an actual benefit in order for the Trustee to recover the property from them. *In re McCook Metals* took the latter approach, requiring not only proof of intent of the debtor to benefit the principals of the transferee entity, but also an actual, quantifiable, accessible benefit to the principals. 319 B.R. at 591–93. Because the principals of the transferee entity controlled all aspects of the transfer, and quantifiably benefitted from their

---

[1] 357 B.R. 374, 379 (Bankr. E.D. Va. 2006). The court noted that "[t]he value of the accounting practice transferred to MFG was not proven by the independent valuation of a disinterested expert," and relied on Stephen Meredith's testimony in a prior proceeding that the value of the practice as a going concern was the annual revenue in 2002. *Id.*

control of the property, the Trustee in that case could recover from them. *Id.*

Ms. Meredith did not receive any benefit from being the president of the corporate entity which provided Mr. Meredith a means to continue his employment. The value of the accounting practice is not synonymous with the value of the benefit to Ms. Meredith, particularly because she did not control any aspect of the transferred property. The value of the property was not accessible to her because Mr. Meredith himself created the value of the property, and remained in total control of it during the time the accounting practice was part of MFG. While Mr. Meredith committed a fraudulent transfer of property under Section 548 of the Bankruptcy Code, the Bankruptcy Court found that there was "no proof of fraud on the part of Darlene Meredith." *In re Meredith*, 357 B.R. at 381. Ms. Meredith's lack of control over the practice as a going concern is evident in the fact that Mr. Meredith transferred his accounting practice to the PLLC in July 2003, at which point Ms. Meredith's involvement ceased without any benefit having accrued to her.

Transfer beneficiary liability should be limited to the value of the benefit actually received. *In re McCook Metals*, 519 B.R. at 593. The Bankruptcy Court initially believed that Ms. Meredith had received $43,000 in salary from MFG, as evidenced by her 2003 federal tax return. However, in considering her motion to reconsider, the Bankruptcy Court accepted Ms. Meredith's proffered explanation that MFG was a functional clearinghouse for the Merediths' other businesses, and that her salary was in fact for services performed in the course of her employment with the Mortgage Resource Group, another Meredith business. This Court does not find the Bankruptcy Court's factual finding on this matter to be clearly erroneous. Because Ms. Meredith's W-2 form reflecting income for services actually performed was the only evidence of a quantifiable benefit to her from MFG, the Bankruptcy Court properly concluded that Ms. Meredith received no actual, quantifiable benefit from the fraudulent transfer.

Even if Ms. Meredith were a liable party under Section 550(a), recovery against her in the amount of $138,752.99 would be impermissible. Section 550(d) bars double recovery of avoidable transferred property. The Trustee took possession of the accounting practice on

September 9, 2005. Accordingly, even when an initial transferee or a party for whose benefit the transfer was made would be liable to the estate for the fraudulently transferred property, the Bankruptcy Code's prohibition against double recovery means that the transferee is entitled to offset its liability for the transfer by any amount that the Trustee has already received for it.[2] The Trustee has already taken possession of, and liquidated, the very property that it now seeks the "value" of from Ms. Meredith: Mr. Meredith's accounting practice. *See In re Cybridge Corp.*, 312 B.R. 262, 271 (D.N.J. 2004) ("Section 550(d) of the Code empowers courts to prohibit a trustee from recovering under Section 550(a) from a transferee that has already returned to the estate that which was taken in violation of the Code.").

Additionally, Section 550(a) provides that to the extent that a transaction is avoided, "the trustee may recover, for the benefit of the estate, the property transferred, *or if the court so orders*, the value of such property." 11 U.S.C. § 550(a) (emphasis added). This language evinces a Congressional preference that the property itself be returned to the estate, the value of the property being an alternative only available by court order. *In re Morris Commc'ns NC Inc.*, 75 B.R. 619, 629 (Bankr. W.D.N.C. 1987), *rev'd on other grounds*, 914 F.2d 458 (4th Cir. 1990). No court has ordered such recovery in this matter, so the return of the accounting practice itself is sufficient to make the estate whole.

Finally, even if this Court were to award the value of the property, the Trustee is not entitled to a $138,752.99 recovery from Ms. Meredith. Section 550 does not state at what time the value of the transferred property should be determined for purposes of restitution to the estate. Although the Bankruptcy Court determined the "value" of the accounting practice "in the absence of other evidence," 357 B.R. at 379, that figure was the value of the practice at the time of the transfer. The value had fallen considerably by the time the Trustee brought this adversary proceeding. All the value of the accounting practice flowed from Mr. Meredith's expertise and

---

[2] The Fourth Circuit came to the same conclusion in an unpublished opinion. *See In re Fla. Props. Ltd. P'ship Plan Trust*, Nos. 97-2583, 97-2507, 1998 WL 957455, *5 (4th Cir. Sep. 22, 1998).

training as a Certified Public Accountant. He was deceased at the time the Trustee took possession and liquidated the practice.[3] Consequently, the accounting practice recovered by the Trustee had significantly diminished in value.[4] This is a sufficient recovery under Section 550.[5] Ms. Meredith was never enriched by the transfer of her husband's accounting practice to MFG, and certainly not in the amount of $138,752.99. To allow the Trustee to recover the value of the property at the time it was transferred, rather than the property itself, would amount to an unjust enrichment of the bankruptcy estate.

In the final analysis, this Court cannot conclude that the factual findings of the Bankruptcy Court are clearly erroneous. The record amply supports the finding that Ms. Meredith acquired no quantifiable benefit from the fraudulent transfer. Consequently, the Bankruptcy Court appropriately denied recovery of its value from her.

## V. Conclusion

Finding neither legal nor factual error in the Bankruptcy Court's ruling, this Court will affirm the Bankruptcy Court's decision.

An appropriate order will accompany this Memorandum Opinion.

---

[3] Mr. Meredith died unexpectedly on or around September 16, 2005, one week after the Bankruptcy Court entered default judgment against the PLLC.

[4] When the Trustee liquidated the practice several weeks after Mr. Meredith's death, its assets consisted of client lists, office furniture, and office supplies including a computer.

[5] In another unpublished opinion, the Fourth Circuit found it inequitable to permit a trustee to recover the monetary value of a $50,000 Deed of Trust, where the transferee was never actually enriched in that amount but rather held a contingent interest in the equity of the debtors' residence. *In re Broumas*, Nos. 97-1183, 97-1182, 1998 WL 77842, *6 (4th Cir. Feb. 24, 1998). The reasoning of *Broumas* is equally applicable here: "If the transfer had never occurred, the creditors of the Debtors' bankruptcy estate would be no worse off because the [property transferred] became permanently valueless prior to liquidation and distribution through no fault of the [transferee]." *Id.*

                                                              /s/
                                                 Henry E. Hudson
                                                 United States District Judge

ENTERED this 19th day of April, 2007.
Richmond, VA